IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| NORTHERN AGRI BRANDS LLC, *Plaintiff*, v. CEN-TEX SEED INC., MATTHEW MATUS, SUZANNE MATUS, CEN-TEX SEED & DELINTING HOLDING CO., and JOHN DOES 1-50, *Defendants*. | CASE NO. 6:19-CV-653 |

## COMPLAINT

Plaintiff Northern Agri Brands LLC brings this action for damages and permanent injunctive relief against Defendants Cen-Tex Seed Inc., Matthew Matus, Suzanne Matus, Cen-Tex Seed & Delinting Holding Co., and John Does 1-50, for their unauthorized sale, offer for sale, conditioning, and dispensing without proper notice, of Plaintiff's proprietary triticale varieties, as well as instigating and actively inducing violations of one or more prohibited acts by others, all in violation of Plaintiff's rights under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* ("PVPA"). Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States, and 28 U.S.C. § 1338, which

provides that district courts have original jurisdiction over any civil action arising under any Act of Congress relating to plant variety protection.

2.        Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims, including Defendants' unauthorized sales of the protected seed, occurred in this district, and most of the Defendants reside in this district.

## THE PARTIES

3.        Plaintiff Northern Agri Brands LLC is a Delaware limited liability company with its headquarters located in , M. It is a seed company with an internal research and development division that brings cutting edge seed technology to agricultural markets across the country. Through its network of certified seed producers and licensed dealers, it offers an array of high quality seed products to farmers including numerous varieties of triticale, rye and alfalfa. Plaintiff is the owner of numerous protected varieties of triticale, which is a crop species resulting from a breeder's cross between wheat and rye.

4.        Defendant Cen-Tex Seed Inc. is an agricultural business located in or around Hillsboro, Hill County, Texas. Matthew Matus and Suzanne Matus are principals of Cen-Tex Seed Inc. and operate a substantial portion of their illegal seed business under its name, including the illegal sale of PVPA-protected seed varieties owned by Plaintiff. On information and belief, Cen-Tex Seed Inc. is not an incorporated entity but instead is an assumed name of Cen-Tex Seed & Delinting Holding Co.  Cen-Tex Seed Inc. has infringed the intellectual property rights of Plaintiff by, among other things, selling PVPA-protected triticale varieties without authority.

5.        Alternatively, if Cen-Tex Seed Inc. is not an assumed name of Cen-Tex Seed & Delinting Holding Co., then Cen-Tex Seed Inc. is the name of an unincorporated general partnership owned and operated by Matthew Matus and Suzanne Matus.

6.     Defendant Matthew Matus is an individual residing in or around West, McLennan County, Texas. He is a principal and decisionmaker of Cen-Tex Seed Inc. and, together with Suzanne Matus, owns and controls Cen-Tex Seed Inc. On information and belief, he directly participated in the infringement of the intellectual property rights of Plaintiff by, among other things, selling Plaintiff's PVPA-protected triticale varieties without legal authority.

7.     Defendant Suzanne Matus is an individual residing in or around West, McLennan County, Texas. She is a principal and decisionmaker of Cen-Tex Seed Inc. and, together with Matthew Matus, owns and controls Cen-Tex Seed Inc. In information and belief, she directly participated in the infringement of the intellectual property rights of Plaintiff by, among other things, selling Plaintiff's PVPA-protected triticale varieties without legal authority.

8.     Defendant Cen-Tex Seed & Delinting Holding Co. is a Texas domestic for-profit corporation located in or around Hillsboro, Hill County, Texas. Matthew Matus is the registered agent and a principal of Cen-Tex Seed & Delinting Holding Co., and, on information and belief, he operates a substantial portion of his illegal seed business under its name, including the illegal sale of PVPA-protected seed varieties owned by Plaintiff. It shares the same business address as Cen-Tex Seed Inc.  Cen-Tex Seed & Delinting Holding Co. has infringed the intellectual property rights of Plaintiff by, among other things, selling PVPA-protected triticale varieties without authority.

9.     By virtue of their common ownership and control and their acting in concert to infringe the intellectual property rights of Plaintiff, Cen-Tex Seed Inc., Matthew Matus, Suzanne Matus, and Cen-Tex Seed & Delinting Holding Co. are collectively referred to in this complaint as "Cen-Tex."

10.     Defendants John Doe 1-50 are (i) upstream producers who supplied or assisted with the multiplication of unauthorized PVPA-protected triticale for Cen-Tex; (ii) downstream customers who purchased unauthorized PVPA-protected triticale from or through Cen-Tex or other distributors connected to Cen-Tex; and (iii) other persons otherwise acting in concert with Cen-Tex in the illegal seed operation. Defendants John Doe include those individuals who work for or with Cen-Tex and directly participated in the purchase, conditioning, sale, storage, shipment, or dispensing of unauthorized PVPA-protected triticale seed. On information and belief, most of the as-yet unidentified John Doe Defendants reside within the State of Texas.

## STATEMENT OF CLAIM

## PLANT VARIETY PROTECTION REGISTRATION

11.     This action arises under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.,* which provides patent-like protection to breeders of certain varieties, and their assignees, who may acquire the right to prevent others from selling the variety for a period of twenty years. On May 9, 2014, Plaintiff's predecessor in interest made application to the Plant Variety Protection Office pursuant to § 2481 of the PVPA for protection of a novel variety of triticale it had developed known as the "SY TF 813" triticale variety.

12.     On March 30, 2015, a Plant Variety Protection (PVP) Certificate for the SY TF 813 variety was issued to Plaintiff's predecessor in interest pursuant to 7 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. The duration of a PVP Certificate is twenty (20) years from the date of issuance, 7 U.S.C. § 2483(b)(1), and Certificate No. 201400329 is not scheduled to lapse until March 30, 2035. The PVP Certificate for SY TF 813, which is commonly referred to as the "813" variety, is attached as Exhibit 1.

13.     On May 9, 2014, Plaintiff's predecessor in interest made application to the Plant Variety Protection Office pursuant to § 2481 of the PVPA for protection of another novel variety of triticale it had developed known as the "SY TF 131" triticale variety.

14.     On March 30, 2015, a PVP Certificate for the SY TF 131 variety was issued to Plaintiff's predecessor in interest pursuant to 7 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201400328 is not scheduled to lapse until March 30, 2035. The PVP Certificate for SY TF 131, which is commonly referred as the "131" variety, is attached as Exhibit 2.

15.     By an IP Assignment dated September 30, 2015, Plaintiff obtained all rights to the PVP Certificates for the 813 and 131 triticale varieties.

16.     The PVP Certificate for the 131 variety specified that the seed of the variety could only be sold in the United States as a class of certified seed, meaning that before sale the seed had to be certified by an approved governmental or private agency as to variety and purity. This added step is known as a Title V election under the Federal Seed Act, 7 U.S.C. § 1611. *See also* 7 U.S.C. § 2483(a)(2)(A).

17.     At all times relevant herein, the PVP Certificates for the 813 and 131 triticale varieties were and remain in full force and effect.

18.     At all times relevant herein, Defendants had actual notice and knowledge that the 813 and 131 triticale varieties were federally protected by the PVPA.

19.     Section 2541 of the PVPA provides that it is an infringement of the owner's rights in a protected variety, *inter alia*, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety.

Section 2541 also provides that it is an infringement to use the variety for propagation without authority; to stock, condition, ship, or consign the protected variety without authority; or to instigate or actively induce any act that constitutes an infringement.

20.     The PVPA provides in § 2561 that an owner shall have a remedy by civil action for infringement of plant variety protection and that if the variety is sold under the name of the variety shown in the certificate, there is a prima facie presumption that the seed in the bag or lot is the protected variety. Under § 2562 of the PVPA, a PVP Certificate is presumed to be valid.

21.     Section 2563 of the PVPA provides that a court may grant an injunction to prevent violations of rights under the PVPA. Section 2564 of the PVPA provides that upon a finding of infringement the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty together with interest and costs.  Section 2564 also provides that the court may increase the damages up to three times the amount determined and, in exceptional cases, the court may award reasonable attorney's fees to the prevailing party under § 2565.

22.     Section 2543 of the PVPA provides a crop exemption for growers and other persons that permits a bona fide sale of a protected variety into usual grain channels, but § 2543 does not exempt from PVPA protection the sale of grain of a protected variety for use as seed for reproductive purposes without the authorization of the owner. Section 2543 further provides that if a purchaser diverts grain from usual grain channels to use for reproductive purposes, that purchaser is deemed to have notice under § 2567 that its actions constitute an infringement of § 2541 for purposes of a damages action by the owner.

## DEFENDANTS' UNAUTHORIZED USES OF PROTECTED VARIETIES

23.     Cen-Tex describes itself on its website as a "local seed packaging distributor." It offers numerous products and services relating to seed and crop production, including seed cleaning, seed treating, seed storage, and seed packaging services, as well as various seed products for purchase and planting. Below is a photograph of Cen-Tex's primary place of business in Hillsboro, Texas:



24.     Leading into February 2017, Cen-Tex was storing large volumes of two of Plaintiff's protected triticale varieties, the 813 and the 131 varieties. Plaintiff owned the physical seed (not merely the intellectual property rights in the varieties) and was paying Cen-Tex to store it. The seed had been in storage with Cen-Tex for more than a year.

25.     On February 9, 2017, Plaintiff instructed Cen-Tex to dispose of all triticale seed of both varieties. At the same time, Plaintiff explicitly notified Cen-Tex that none of the triticale

could be used as seed. Plaintiff communicated such instructions and notice to Cen-Tex via an email sent to Suzanne Matus's attention. Plaintiff, as the owner of the physical seed inventory in the possession of Cen-Tex as well as the underlying intellectual property rights in the seed, had the exclusive legal authority to control its use and disposition.

26.     However, Plaintiff recently learned that Cen-Tex is secretly selling Plaintiff's protected seed varieties without authority. On information and belief, instead of disposing of the seed as instructed in February 2017, Cen-Tex retained all or a substantial portion of the triticale and used it for seed purposes, in breach of Plaintiff's express instructions for handling its seed and in violation of Plaintiff's intellectual property rights. Such illegal uses may have preceded February 2017, as the seed was in Cen-Tex's possession for a substantial period of time prior to that date.

27.     On information and belief, Cen-Tex planted and multiplied the triticale seed to increase its inventory of the seed. Cen-Tex's planting of the seed without authority constitutes sexual multiplication of the seed as a step in marketing the variety, in violation of the PVPA.

28.     Cen-Tex is knowingly selling Plaintiff's 813 variety without authority. On information and belief, Cen-Tex is also knowingly selling Plaintiff's 131 variety without authority. Cen-Tex is likely selling additional varieties of Plaintiff's seed without authority. The act of selling the seed without authority constitutes an illegal sale and offer for sale of the varieties in violation of the PVPA.

29.     Cen-Tex is in the seed business and is fully aware of the strict protocols and requirements necessary before PVPA-protected triticale may be sold legally for seeding purposes. Legal requirements for certified seed include mandatory field inspections by the state certification agency, mandatory submission of seed samples for laboratory testing, formal certification of the

crop, and mandatory reporting to the crop certification agency and variety owner. Field inspections, seed testing and formal certification are important to ensuring purity and quality of the seed before it is sold to other producers for planting. Accurate reporting of plantings and yields is essential to preserving the variety owner's rights, including its right to collect royalties in compensation for its research investment.

30.     Cen-Tex knowingly ignored such legal requirements and sold the 813 variety, and the 131 variety on information and belief, to other distributors and producers without undergoing field inspection, without submitting seed samples for testing, without certification, and without reporting its plantings, yields, or sales to the appropriate authorities. By ignoring such legal requirements, Cen-Tex sought to enhance its personal profits because it avoided costs of inspection, testing and certification, and, most importantly to Cen-Tex, it avoided payment of the required royalties owed to Plaintiff for every sale of its protected triticale seed.

31.     Cen-Tex sold the protected varieties to other distributors and growers without proper labeling. The refusal to properly mark the protected varieties in connection with sales and transfers to distributors and growers constitutes a separate violation of the PVPA.

32.     At all times relevant to the complaints herein, Plaintiff only authorized sales of 813 and 131 variety triticale seed with written notice containing statutorily designated language signifying that the seed was protected under the PVPA and that unauthorized propagation or multiplication of the seed was prohibited. Plaintiff required such notice on all bags of its protected triticale seed and on notices accompanying all bulk sales of such seed. In addition, Plaintiff consistently and prominently marked the 813 variety and the 131 variety with statutory PVPA notices on its marketing and promotional materials for such varieties.

33.     Cen-Tex sold the triticale it had diverted from usual grain or channels through a practice known as "brown bagging," in which a person or entity uses grain grown from proprietary seed and prepares it for use as seed without authorization of the owner of the proprietary seed. In some areas of the country, the grain is repackaged in seed bags, often brown, and the infringer sells the grain under the name of the variety from which the grain was grown. In Texas, it is more typical to make an unauthorized sale of the grain in bulk, but the overarching practice of selling the harvest of a protected variety without authority of the variety owner is still understood in the industry as brown bagging.

34.     Cen-Tex identity-preserved the varieties and thereafter sold them for use as seed to other distributors and growers.

35.     At no time was Cen-Tex authorized to sell 813 or 131 for reproductive purposes as described above.

36.     Cen-Tex resold the triticale without giving notice that the seed was subject to PVPA protection, without giving notice of the identity of the PVP Certificate holder, and without giving notice of any other restrictions to prevent purchasers of the seed from further replicating it.

37.     For example, in August 2019 Cen-Tex sold for propagation purposes thousands of pounds of 813 variety triticale seed without Plaintiff's authority. Cen-Tex sold the seed explicitly by variety name. Cen-Tex expressly declared that it was not authorized to sell the seed, yet it sold the seed anyway. As part of the same illegal transaction, Cen-Tex dispensed the seed in a form which can be propagated and did so without giving written notice as to the variety's protected status.

38.     Cen-Tex has sold without authority a substantial quantity of 813 variety seed for propagation purposes in recent years.  On information and belief, Cen-Tex has also sold without authority a substantial quantity of 131 variety seed for propagation purposes in recent years.

39.     Cen-Tex's unrestricted sale of Plaintiff's protected varieties placed Plaintiff at great risk of harm since each bushel of seed sold by Cen-Tex can be planted, harvested, and replanted to produce millions of bushels of seed in just five generations.

40.     Cen-Tex's unauthorized sales also placed the reputation of the protected varieties at risk since they were sold without the rigorous production standards employed by Plaintiff and without the certification by a governmental or approved private entity.

41.     Cen-Tex is deemed under § 2543 of the PVPA to have had notice that its acts in diverting the protected triticale varieties from normal grain use to use as seed for reproductive purposes constituted an infringement of Plaintiff's rights under the PVPA.

42.     Cen-Tex had actual and constructive knowledge that the 813 and 131 varieties were federally protected by law by virtue of its direct handling of the seed, its interactions with Plaintiff and Plaintiff's predecessor in interest, and its extensive experience operating as a commercial seed business, yet it willfully disregarded the law and sold the varieties without adequate quality control, without restrictions against replanting, without payment of any royalty due, and without providing any downstream buyers with the required statutory notices that serve to protect the integrity of the varieties.

43.     Cen-Tex knew that the vast majority of seed sold legitimately in Texas was subject to PVPA protection, and it had ready access to information as to the PVP status of the 813 and 131 varieties.

44.     Seed cleaning is one form of seed conditioning, which is one of the acts specifically enumerated in the PVPA from which infringement liability may arise. Cen-Tex is in the business of cleaning seed. On information and belief, as part of its illegal seed operation Cen-Tex cleans (i.e., conditions) the unauthorized seed in preparation for reselling it to third party customers for propagation purposes. Such conditioning is not related to the farmers' saved exemption under 7 U.S.C. § 2543 and is therefore a distinct violation under the PVPA.

45.     On information and belief, Defendants John Doe 1-50 are (i) upstream producers who supplied or assisted with the multiplication of unauthorized PVPA-protected triticale for Cen-Tex; (ii) downstream customers who purchased unauthorized PVPA-protected triticale from or through Cen-Tex or other distributors connected to Cen-Tex; and (iii) other persons otherwise acting in concert with Cen-Tex in the illegal seed operation.

46.     Discovery is anticipated to produce additional information on the extent and nature of the illegal seed distribution network and is likely to reveal additional protected crop varieties being sold without authority much in the same way as shown by the specific examples involving the 813 triticale variety.

## COUNT I

## DAMAGES FOR INFRINGEMENT OF § 2541(a) OF THE PVPA

47.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

48.     Without authorization from Plaintiff, Cen-Tex stocked the 813 variety, and the 131 variety on information and belief, for purposes in violation of the PVPA.

49.     On information and belief, without authorization from Plaintiff, Cen-Tex conditioned the 813 and 131 varieties for propagation purposes in violation of the PVPA.

50.     Without authorization from Plaintiff, Cen-Tex sold the 813 variety, and the 131 variety on information and belief, for the purpose of propagation in violation of the PVPA.

51.     Without authorization from Plaintiff, Cen-Tex dispensed the 813 variety, and the 131 variety on information and belief, in a form which can be propagated, without restriction to other growers, in violation of the PVPA.

52.     Without authorization from Plaintiff, Cen-Tex instigated and actively induced infringement under the PVPA by engaging in the illegal seed business described above, in violation of the PVPA.

53.     Defendants' actions constitute an infringement of Plaintiff's rights under § 2541 of the PVPA for which all Defendants, including Defendants John Doe 1-50, are accountable in damages.

54.     As a result of Defendants' actions, Plaintiff has suffered harm for which it is entitled to damages, including without limitation:

a)  Compensation for the Defendants' unauthorized sale, use, and conditioning of Plaintiff's protected seed varieties in an amount not less than a reasonable royalty;

b)  Damage to Plaintiff's reputation or the reputations of its protected seed varieties by the unauthorized sale of said varieties which were not produced in accordance with Plaintiff's practices and standards; and

c)  Expenses incurred or reasonably expected to be incurred as a direct result of Plaintiff's actions to recover seed or grain grown from Defendants' unauthorized purchase, use, and sale of seed, and/or expenses incurred in identifying and notifying persons who purchased Plaintiff's protected seed varieties from Defendants that such seed was not produced by or in accord with the standards of Plaintiff and that any grain grown from such seed is protected by the PVPA, cannot be grown for any purpose other than as commercial grain crop, and cannot be held out as seed of one of Plaintiff's protected varieties.

## COUNT II

## INJUNCTION PURSUANT TO § 2563 OF THE PVPA

55. Plaintiff incorporates by reference the allegations set forth in the foregoing

paragraphs.

56. Plaintiff is entitled to injunctive relief pursuant to § 2563 of the PVPA as follows:

a) Permanently enjoining any further sales or other disposition by Defendants of grain grown from Plaintiff's PVPA-protected varieties, including the 813 and 131 varieties, for reproductive purposes;

b) Requiring the ultimate destruction of all 813 and 131 variety triticale in Defendants' possession or control to prevent future illegal harvests from being replanted;

c) Allowing for access to Defendants' facilities and premises, including leased lands, to identify the scope of the infringing conduct at a time when the crops remain in the field, thereafter permitting the crops to grow, harvest, and then store in constructive trust while the suit proceeds;

d) Requiring the disclosure of the names and addresses of all persons or entities who purchased triticale seed from, supplied triticale seed to, conditioned triticale seed for, or stored triticale seed for or with Defendants, to allow the parties to identify the scope of the illegal replanting and allow the parties sufficient time to give adequate notice to those Defendants John Doe 1-50 of their opportunity to be heard, with the ultimate goal to allow the crop, once identified, to be harvested and stored in constructive trust while the suit proceeds; and

e) Requiring an accounting of all revenues and profits Defendants derived from the sale, use and conditioning of Plaintiff's protected varieties, including 813 and 131 variety triticale.

## COUNT III

## TREBLE DAMAGES AND ATTORNEYS' FEES

57. Plaintiff incorporates by reference the allegations set forth in the foregoing

paragraphs.

- 14 -

58.     Cen-Tex knew or recklessly disregarded the fact that by brown bagging the grain in question and selling it for reproductive purposes it was infringing federal intellectual property rights.

59.     Cen-Tex knowingly sold the brown-bagged seed at a substantial discount compared to the price authorized dealers charged for legitimate seed. Cen-Tex intentionally set its pricing to divert sales from authorized dealers for its own profit.

60.     Cen-Tex knowingly and intentionally caused substantial damage to Plaintiff and recklessly placed Plaintiff at substantial risk of further misuse of its seed by placing the seed in commerce without notice of its protected status.

61.     As the result of Cen-Tex's actions, Plaintiff has incurred substantial damages, attorneys' fees, and costs and will in the future incur additional damages, attorney's fees, and costs.

62.     Cen-Tex's actions constitute an exceptional case for which the award of attorney's fees and costs are recoverable pursuant to § 2565 of the PVPA.

63.     Treble damages are appropriate pursuant to § 2564 of the PVPA.

### NOTICE TO DEFENDANTS TO PRESERVE EVIDENCE

64.     Defendants are legally obligated to take reasonable steps to preserve evidence. This evidence preservation duty applies to all documents, tangible things and electronically stored information ("ESI") potentially relevant to the issues in this cause, including but not limited to seed samples, stored grain, farming records, sales receipts, purchase receipts, scale tickets, and accounting information in paper or ESI format. ESI includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as: digital communications (e.g., e-mail, voicemail, text messages, instant messages); word processing documents (e.g., Word or WordPerfect documents and drafts); spreadsheets and tables (e.g., Excel

or Lotus 123 worksheets); accounting application data (e.g., QuickBooks, Money, Peachtree data files); image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF images); sound recordings (e.g., .WAV and .MP3 files); video and animation (e.g., .AVI and .MOV files); and databases (e.g., Access, Oracle, SQL Server data, SAP).

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)   Awarding Plaintiff compensation for damages resulting from the infringement in an amount not less than a reasonable royalty, and trebled;

b)   Ordering permanent injunctive relief:

    i.   Directing Defendants to make no further sales for reproductive purposes of any seed for which Plaintiff holds PVPA protection without express authorization from Plaintiff;

    ii.   Directing Defendants to identify all fields on which they are cultivating a current triticale crop and all locations where they are storing triticale to allow Plaintiff to identify the extent of the infringement prior to when Defendants harvest and permanently remove the harvest, thereby ordering that there be no spoliation of evidence because such evidence is necessary to assess the true extent of infringement; and

    iii.   Requiring Defendants to account for all acquisitions, uses and sales of PVPA-protected seed of Plaintiff, including the names and addresses of all suppliers and purchasers and the quantity so purchased or sold.

c)   Awarding pre-judgment and post-judgment interest;

d)   Awarding Plaintiff its attorneys' fees, costs, and expenses incurred in this action; and

e)   Awarding such other relief as the Court may deem just and proper.

Respectfully submitted,


By:  */s/ Royal B. Lea, III*
    Royal B. Lea, III
    Texas State Bar No. 12069680
    royal@binghamandlea.com
    BINGHAM & LEA, P.C.
    319 Maverick Street
    San Antonio, Texas 78212
    (210) 224-1819 Telephone
    (210) 224-0141 Facsimile

    *and*

    Adam L. Hopkins (Ark. #2006282)
    ahopkins@roselawfirm.com
    Mark Murphey Henry (Ark. #97170)
    mhenry@roselawfirm.com
    ROSE LAW FIRM
    P.O. Box 4800
    Fayetteville, AR 72702
    Phone:  (479) 856-6081
    Fax:  (479) 695-1332
    *Applying Pro Hac Vice*

COUNSEL FOR PLAINTIFF, NORTHERN
AGRI BRAND, LLC

# EXHIBIT 1



No.                                           *201400329*

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

# Syngenta Crop Protection AG

### Whereas, THERE HAS BEEN PRESENTED TO THE

### Secretary of Agriculture

An application requesting a certificate of protection for an alleged distinct variety of sexually reproduced, or tuber propagated plant, the name and description of which are contained in the application and exhibits, a copy of which is hereunto annexed and made a part hereof, and the various requirements of LAW in such cases made and provided have been complied with, and the title thereto is, from the records of the PLANT VARIETY PROTECTION OFFICE, in the applicant(s) indicated in the said copy, and Whereas, upon due examination made, the said applicant(s) is (are) adjudged to be entitled to a certificate of plant variety protection under the LAW.

Now, therefore, this certificate of plant variety protection is to grant unto the said applicant(s) and the successors, heirs or assigns of the said applicant(s) for the term of TWENTY years from the date of this grant, subject to the payment of the required fees and periodic replenishment of viable basic seed of the variety in a public repository as provided by LAW, the right to exclude others from selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or conditioning it for propagation, or stocking it for any of the above purposes, or using it in producing a hybrid or different variety therefrom, to the extent provided by the PLANT VARIETY PROTECTION ACT. IN THE UNITED STATES SEED OF THIS VARIETY (1) SHALL BE SOLD BY VARIETY NAME ONLY AS A CLASS OF CERTIFIED SEED AND (2) SHALL CONFORM TO THE NUMBER OF GENERATIONS SPECIFIED BY THE OWNER OF THE RIGHTS. (84 STAT. 1542, AS AMENDED, 7 U.S.C. 2321 ET SEQ.)

*TRITICALE*

*'SY TF 813'*

In Testimony Whereof, *I have hereunto set my hand and caused the seal of the* Plant Variety Protection Office *to be affixed at the* **City of Washington, D.C.** *this  thirtieth day of March, in the year* **two thousand and fifteen.**

*Attest:*

*Commissioner*
*Plant Variety Protection Office*

*Secretary of Agriculture*

**EXHIBIT 2**



No.                                                                                           *201400328*

# THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

## Syngenta Crop Protection AG

#### Whereas, THERE HAS BEEN PRESENTED TO THE

#### Secretary of Agriculture

An application requesting a certificate of protection for an alleged distinct variety of sexually reproduced, or tuber propagated plant, the name and description of which are contained in the application and exhibits, a copy of which is hereunto annexed and made a part hereof, and the various requirements of LAW in such cases made and provided have been complied with, and the title thereto is, from the records of the PLANT VARIETY PROTECTION OFFICE, in the applicant(s) indicated in the said copy, and Whereas, upon due examination made, the said applicant(s) is (are) adjudged to be entitled to a certificate of plant variety protection under the LAW.

Now, therefore, this certificate of plant variety protection is to grant unto the said applicant(s) and the successors, heirs or assigns of the said applicant(s) for the term of TWENTY years from the date of this grant, subject to the payment of the required fees and periodic replenishment of viable basic seed of the variety in a public repository as provided by LAW, the right to exclude others from selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or conditioning it for propagation, or stocking it for any of the above purposes, or using it in producing a hybrid or different variety therefrom, to the extent provided by the PLANT VARIETY PROTECTION ACT. IN THE UNITED STATES SEED OF THIS VARIETY (1) SHALL BE SOLD BY VARIETY NAME ONLY AS A CLASS OF CERTIFIED SEED AND (2) SHALL CONFORM TO THE NUMBER OF GENERATIONS SPECIFIED BY THE OWNER OF THE RIGHTS. (84 STAT. 1542, AS AMENDED, 7 U.S.C. 2321 ET SEQ.)

*TRITICALE*

*'SY TF 131'*

In Testimony Whereof, *I have hereunto set my hand and caused the seal of the* Plant Variety Protection Office *to be affixed at the* **City of Washington, D.C.** *this* thirtieth day of March, *in the year* **two thousand and fifteen.**

*Attest:*

*Commissioner*
*Plant Variety Protection Office*                    *Secretary of Agriculture*